**STATE**

v.

**Hector JAIMAN.**

**No. 2002–286–C.A.**

Supreme Court of Rhode Island.

June 22, 2004.

William Landry, Providence, for Plaintiff.

Alfred G. Thibodeau, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, and SUTTELL, JJ.

GOLDBERG, Justice.

## OPINION

This case came before the Supreme Court on appeal of the defendant, Hector Jaiman (defendant or Jaiman), from a Superior Court judgment of conviction arising from an indictment charging him with murder, conspiracy to murder, and felony assault. Jaiman's allegations of error concern the testimony of his cousin, Ariel Muriel (Muriel), a previously cooperative state witness who, during this second jury trial engaged in a testimonial double-cross of the state. For the following reasons, we affirm the convictions.

### Facts and Travel

On the evening of September 18, 1993, Jaiman was driving a car in the City of Central Falls accompanied by Muriel. During their drive, they encountered a car driven by Albert Robertson (Robertson), in which Thomas DeGrafft (DeGrafft) and Dean Zigbuo (Zigbuo) were passengers. As the two cars drove side by side, Muriel pointed a gun out of the passenger-side window and fired multiple rounds into the Robertson vehicle. Robertson was shot, but survived. DeGrafft suffered two bullet wounds in the back and head and died from his injuries. Zigbuo escaped without injury.

On May 12, 1994, Jaiman and Muriel were charged with six offenses stemming from the shooting: murder of DeGrafft; assault with intent to murder Robertson; conspiracy to murder DeGrafft; conspiracy to assault Robertson; the felony assault of Zigbuo; and conspiracy to assault Zigbuo. While Muriel was incarcerated awaiting trial, he instructed his lawyer to find some way to avoid a sentence of life imprisonment. Although he was the shooter in this homicide, Muriel, on the eve of trial, entered into a plea bargain with the Department of Attorney General. In exchange for his testimony against Jaiman, Muriel would plead guilty to second-degree murder and receive a sentence of fifty years, with twenty years to serve and thirty years suspended, and would appear before the Parole Board in July 2000, less than seven years later. In accordance with his plea bargain, Muriel, through an interpreter, gave an unsworn seven-page statement (police statement) to Central Falls Police Detective Paul Carnes. In the police statement Muriel alleged that Jaiman gave him a gun and instructed him to shoot Robertson, with whom Jaiman was having problems.

Jaiman was tried before a Providence County Superior Court jury in October and November 1995. Muriel, who was the state's primary witness, testified that his plea agreement with the state required him to testify against Jaiman, and that he did not care whether his testimony was

truthful because he was looking out for himself. The jury was unable to reach a unanimous verdict, and a mistrial was declared.

Jaiman was retried before a jury in February and March 2000. The state again called Muriel to the stand, but initially he refused to testify until he consulted with his lawyer. Muriel admitted that the basis for his refusal to testify was his understanding that the plea agreement with the state required him to testify truthfully only once, and that he already had done so during the first trial. The record discloses that his attorney explained to him that his plea bargain still was in effect, and that if he refused to testify, the Attorney General could seek to vacate the agreement. Muriel then suffered a convenient failure of memory, declaring over and over again, especially at critical points about details of this drive-by shooting, that he had difficulty remembering the events of September 18, 1993. The witness explained that this unfortunate failure of memory was the result, in part, of the passage of time and the stress of his incarceration.

Muriel testified that he had no memory of whether Jaiman told him to kill Robertson, but conceded that before the murder he had heard that Robertson was looking for Jaiman and that he possessed a weapon. He also testified that he had no memory of Jaiman telling him to shoot Robertson, and could not remember what he did with the gun after the shooting. This lack of memory was in stark contrast to Muriel's testimony at the first trial, when he testified that "[Jaiman] gave me the gun. He told me to shoot." When asked whether he had testified truthfully at the first trial, he responded "As far as I remember, I think so." Significantly, the witness said that he was required to testify truthfully at one trial but not in a subsequent proceeding.

On direct examination, Muriel testified that he could not remember the position of the vehicles when he started firing at the Robertson car, but thought that the car he was in was behind Robertson's car. He was able to recall that Robertson's car turned a corner and that he stopped firing at the car only when he ran out of bullets. Muriel was then presented with his police statement, in an attempt to refresh his recollection, and the following portion of that statement was read into the record:

"Question: Did there come a time that any of the cars turned off the street?

"Answer: The shooting stopped and they turned left and we turned left and they turned right, I think.

"Question: Before you turned left did you shoot at the car any other time?

"Answer: Yes, as [Jaiman's] car was turning onto the street I shot twice more.

"Question: Where did you go then?"

The state then sought to have the police statement itself entered into evidence as a full exhibit. The defendant initially objected but, after a recess, defense counsel said that he and the state had "reached an agreement," and that he did not object to introducing the three questions that the prosecution identified.

The state subsequently sought to introduce additional portions of the police statement to the jury as a full exhibit as a prior inconsistent statement. The trial justice permitted portions of the police statement to be read to the jury by the interpreter who had assisted Muriel at the time he gave the statement.

At the close of the state's case, the trial justice granted a judgment of acquittal on the count alleging a conspiracy to murder DeGrafft. The state dismissed the counts of conspiracy to assault Robertson and conspiracy to assault Zigbuo. On March 3,

2000, the jury found Jaiman guilty of the murder of DeGrafft, assault with intent to murder Robertson, and felony assault of Zigbuo. The trial justice heard and denied Jaiman's motion for a new trial and he was sentenced to a mandatory term of life imprisonment for the first-degree murder of DeGrafft, and to concurrent terms of twenty years to serve for each assault conviction.

Jaiman filed a timely notice of appeal with this Court on March 15, 2000. In July 2002, the case was remanded to the Superior Court for a hearing on a motion for a new trial based upon newly discovered evidence. The Superior Court declined to grant a new trial, and the matter was returned to this Court for oral argument.

### Discussion

■ The assignment of error in this appeal solely rests on the introduction of Jaiman's out-of-court statement. The defendant contends that the police statement should not have been introduced as a prior inconsistent statement under Rule 801(d)(1)(A) of the Rhode Island Rules of Evidence. The defendant argues that Muriel's extensive memory lapses rendered him functionally unavailable for meaningful cross-examination and therefore, he was unavailable within the meaning of Rule 804(a)(3) of the Rhode Island Rules of Evidence, when the declarant "testifies to a lack of memory of the subject matter of his or her statement[.]"

■ The defendant also argues that the police statement did not qualify as a R.I.R.Evid. 803(5) recorded recollection, nor was it admissible as a statement against interest under Rule 804(b)(3). We deem these latter arguments waived. To preserve an evidentiary issue on appeal, defendant "was required to show us that he objected specifically to this evidence at trial and that he stated the grounds for his

objection." *State v. Feole*, 748 A.2d 239, 243 (R.I.2000) (per curiam). The record before us clearly demonstrates that Jaiman made two objections, first arguing against admission of the written statement itself to the jury, for which defendant prevailed, and second, arguing that any admission of the statement "has to be limited to those areas which Mr. Muriel has claimed to have no memory." The defendant's objection that the statement "ought not to be * * * delivered to this jury through the mouth of the police officer" was sustained and the interpreter read those portions into evidence. Thus, the only arguable hearsay objection before us on appeal is the use of the police statement as a prior inconsistent statement of the witness.

■ Significantly, although it is defendant's present contention that the admission of the statement violated his Sixth Amendment right to confront and cross-examine the witnesses against him, this issue simply was not preserved for appellate review. Nowhere in the record before this Court is there a suggestion that the use of Jaiman's out-of-court statement in any way had an impact on the Confrontation Clause. Accordingly, we are not confronted with a Sixth Amendment challenge to the admissibility of this evidence, and are faced only with the admissibility of the police statement under Rule 801(d)(1)(A). However, in passing upon the issues presented on appeal, we also are satisfied that defendant was afforded an abundant opportunity to confront his cousin's tireless efforts to demolish the state's case.

■ A trial justice's evidentiary rulings are reviewed for an abuse of discretion. *State v. Martinez*, 651 A.2d 1189, 1193 (R.I.1994). Under Rule 801(d)(1)(A), a prior statement of a witness who testifies at the trial or hearing and is subject to cross-examination is *not hearsay* if the

statement is inconsistent with the declarant's testimony.[1] For a prior statement to be admitted into evidence under Rule 801(d)(1)(A), "there must be two statements and each 'must be sufficiently inconsistent to render the prior statement admissible.'" *State v. Bettencourt*, 723 A.2d 1101, 1111 (R.I.1999) (quoting *State v. Pusyka*, 592 A.2d 850, 853 (R.I.1991)). "The determination of whether a pretrial statement is * * * inconsistent with the witness's in-court testimony is [within] the sound discretion of the trial justice." *Bettencourt*, 723 A.2d at 1111; *State v. Maniatis*, 657 A.2d 149, 157 (R.I.1995); *Pusyka*, 592 A.2d at 853.

Rule 801(d)(1)(A) represents a departure from the federal rule concerning the substantive admissibility of prior inconsistent statements. The Advisory Committee notes to Rule 801(d)(1)(A) explain that "[u]nlike the federal rule, the inconsistent statement need not have been made while under oath subject to penalty of perjury at a trial, hearing, deposition or other proceeding." Advisory Committee's Notes to Rule 801 at 1052. The justification for the rule is that "the usual dangers of hearsay are largely nonexistent where the witness testifies at trial" because the declarant's availability for cross-examination allows the adverse party to probe the veracity of the statement, *California v. Green*, 399 U.S. 149, 154–55, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), and "puts the trier-of-fact in as good a position to appraise the reliability of the prior statement as it would be if the prior statement were made under oath." Advisory Committee's Notes to Rule 801 at 1052. The Supreme Court of the United States has noted that although this formulation of the prior inconsistent state-

ment rule is adopted by a minority of jurisdictions, it represents the modern trend and is "supported by most legal commentators and by * * * proposals to codify the law of evidence * * *." *Green*, 399 U.S. at 154, 90 S.Ct. 1930.

Accordingly, the touchstone of Rule 801(d)(1)(A) is that the witness testify at trial and be available for cross-examination. Although Muriel did testify at trial and was, in fact, cross-examined, defendant contends that his comprehensive inability to recall either his previous testimony or some of the events of September 18, 1993, rendered him functionally unavailable for cross-examination. We disagree; the rule against hearsay is not violated by resort to a prior out-of-court statement by a witness who is reneging on his cooperation agreement based on his ostensible belief that truthful testimony was a once-in-a-lifetime proposition.

Although we are not constrained to undertake a Sixth Amendment Confrontation Clause analysis, we note that in *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the United States Supreme Court considered whether California's adoption of the "minority view"— defining prior inconsistent statements as non-hearsay if the declarant was available for cross-examination—violated the Confrontation Clause of the Sixth Amendment. The Court observed that the Confrontation Clause primarily is concerned with safeguarding a defendant's "literal right to 'confront' the witness at the time of trial" and that admitting a prior inconsistent statement did not conflict with that right if the declarant was in fact available to be

---

1. Rule 801(d)(1)(A) of the Rhode Island Rules of Evidence provides:

    "*Statements Which Are Not Hearsay.* A statement is not hearsay if:

    (1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony * * *."

cross-examined and confronted concerning same. *Green*, 399 U.S. at 157, 90 S.Ct. 1930. The Court could find nothing "in either the history or the purposes of the Confrontation Clause, or in the prior decisions of this Court, that * * * require[s] excluding from evidence the prior statements of a witness who concedes making the statements, and who may be asked to defend or otherwise explain the inconsistency between his prior and his present version of the events in question, thus opening himself to full cross-examination at trial as to both stories." *Id.* at 164, 90 S.Ct. 1930.

As in the case at bar, the witness in *Green* alleged that he had an unfortunate failure of memory about the subject matter of his previous statement to police. He was "markedly evasive and uncooperative on the [witness] stand" such that the witness's prior statement to the police was admitted at trial. *Green*, 399 U.S. at 151–52, 90 S.Ct. 1930 (quoting *People v. Green*, 70 Cal.2d 654, 75 Cal.Rptr. 782, 451 P.2d 422, 423 (1969)). Green's conviction was vacated by the California Supreme Court on Confrontation Clause grounds; however, the Supreme Court of the United States reversed and remanded the matter for a determination of whether the witness's "apparent lapse of memory so affected [defendant's] right to cross-examine as to make a critical difference in the application of the Confrontation Clause * * *." *Id.* at 168–69, 90 S.Ct. 1930. On remand, the California court compared the witness's "curiously vague" trial testimony with his police statement and preliminary hearing testimony and concluded that the trial court properly could disbelieve the witness's alleged lack of memory based on his apparent reluctance to testify against the accused. *People v. Green*, 3 Cal.3d 981, 92 Cal.Rptr. 494, 479 P.2d 998, 1000–03 (1971). When the witness is on the stand, testifying under oath, and admits

making the statement, and the defendant is afforded an adequate opportunity for cross-examination, the Confrontation Clause is satisfied. Importantly, the demeanor of the witness has been subject to the scrutiny of the fact-finder, who can later decide which evidence, if any, is credible. *Id.* at 1004.

Eighteen years after the Court's decision in *Green*, the Supreme Court had an opportunity to further explore memory loss and the Confrontation Clause in the context of an out-of-court statement admitted pursuant to Rule 801(d)(1)(C) of the Federal Rules of Evidence (a statement of identification of a person made after perceiving that person). In *United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), a correctional counselor at a federal prison was attacked and beaten with a pipe, suffering serious bodily injury. As a result of those injuries, the victim's memory was impaired. *Id.* at 556, 108 S.Ct. 838. In an FBI interview conducted one week after the incident, the victim was unable to remember his attacker's name. *Id.* When the FBI agent returned some two weeks later, the victim was able to describe the attack and name his attacker. *Id.* However, when questioned during trial, the victim was unable to remember seeing his assailant during the attack. *Id.* He also admitted that, save for the FBI agent, he could not recall who had visited him during his hospitalization. *Id.*

The Supreme Court ruled that the introduction of the witness's prior statements did not offend the Constitution, even though he no longer could remember the basis for making them. The Court reiterated that the Confrontation Clause "guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Owens*, 484 U.S. at 559, 108 S.Ct. 838

(quoting *Kentucky v. Stincer,* 482 U.S. 730, 739, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987)). Even evidence that traditionally would be categorized as hearsay, such as the out-of-court identification at issue in *Owens,* did not alter the fact that the Confrontation Clause's requirements are satisfied when a hearsay declarant is present at trial, is placed under oath and is subject to unrestricted cross-examination, thus affording the jury an opportunity to observe the witness's demeanor. *Id.* at 561, 108 S.Ct. 838; *see also Makell v. State,* 104 Md.App. 334, 656 A.2d 348, 358 (1995) ("The holding that an out-of-court declarant who is present at trial and on the witness stand shall be deemed to be available for cross-examination, notwithstanding a claimed loss of memory, is dispositive not only of any confrontation problem but of any problem under the Hearsay Rule as well. The pivotal concern for both is that the declarant be available.").[2]

We are of the opinion that *Owens* is dispositive of the issues before the Court. Although the Supreme Court was ruling in the context of the Confrontation Clause, an issue that has been waived in the case on appeal, we perceive no reason why the situation should be any different in the context of Rule 801(d)(1)(A). Rule 801(d)(1)(A) simply requires that the declarant be "subject to cross-examination;" it does not require that the witness possess perfect recall concerning the basis of his or her prior statement or current testimony, nor does it entitle the cross-examiner to an effective examination.

Accordingly, we are of the opinion that the provisions of Rule 801(d)(1)(A) have

been satisfied and that Muriel was subject to cross-examination within the meaning of the rule. Muriel was called to the stand, sworn to testify on pain of perjury, and cross-examined about the events of September 13, 1993, the circumstances of his cooperative statement, his prior testimony and his malfunctioning memory. Defense counsel's cross-examination of Muriel was extensive and damaging, eliciting the terms of his plea agreement with the state and the fact that he was the actual shooter in the murder. At various points during the cross-examination, defense counsel focused on Muriel's purported lack of memory and attempted to refresh his recollection by reading from the police statement, thereby impeaching him extensively on his current inability to recall the basis for his previous statements or certain events on the day in question. The veracity of Muriel's in-court testimony was thoroughly probed and compared with his earlier police statement and the jurors were allowed to make up their own minds whether the police statement was truthful. Muriel's unwillingness or inability to recall either the basis for his previous statement or its substantive details did not render him an unavailable witness, nor did it deprive defendant of his right to cross-examination.

### Conclusion

For the foregoing reasons, the judgment of the Superior Court is affirmed. The case shall be remanded to the Superior Court.

Justice FLAHERTY did not participate.

---

**2.** The Supreme Court noted in *United States v. Owens,* 484 U.S. 554, 563, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), that it would create a "strange" result if a "witness [could] avoid introduction of testimony from a prior pro-

ceeding that is inconsistent with his trial testimony * * * by simply asserting lack of memory of the facts to which the prior testimony related."