January 29, 2019

**Supreme Court**

No. 2017-251-C.A.
(P2/15-3731AG)

State                          :

v.                          :

Michael Stokes.                          :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                         :

v.                          :

Michael Stokes.                 :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**  The defendant, Michael Stokes, appeals from a Superior Court judgment of conviction on three counts of assault with a dangerous weapon, in violation of G.L. 1956 § 11-5-2, for which he was sentenced to three concurrent fifteen-year sentences; three counts of discharging a firearm while committing a crime of violence, in violation of G.L. 1956 § 11-47-3.2(b)(2), for which he was sentenced to three concurrent twenty-year sentences, which are to run consecutive to the sentences for the assault with a dangerous weapon convictions; and one count of carrying a pistol without a license, in violation of § 11-47-8(a), for which he was sentenced to a term of five years' imprisonment, to run concurrently with the sentences for the discharging-a-firearm convictions.  The defendant was also sentenced as a habitual offender to twenty-five years, with fifteen years to serve and the remainder suspended, with probation, to run consecutive to the sentences for the discharging-a-firearm convictions. The defendant seeks to have his convictions vacated, and asks this Court to grant him a new trial on the following grounds: (1) the state untimely disclosed the identity of two witnesses who were placed in witness protection; (2) the trial justice erred in admitting into evidence prior inconsistent statements made to the police by one witness; and (3) the trial justice erred in

denying the defendant's motion for a new trial. For the reasons set forth herein, we affirm the judgment of the Superior Court.

# I

## Facts

In the early hours of October 17, 2015, three people were shot inside El Tiburon, a small Providence sports bar with a few pool tables and a jukebox, located at the intersection of Harold and Valley Streets.

Renee Tager was one of the three victims. She testified at trial that she and a friend had arrived sometime between midnight and 12:30 a.m. She was standing by the pool tables near the back door when, "out of nowhere [she] heard a gunshot[,]" then she "heard a series of gunshots." Tager ran outside and, moments later, realized she had been shot in the leg.

The second victim, Dwayne "Fat Cat" Monteiro, testified that he arrived with a friend at El Tiburon around 1:30 a.m. for a nightcap after having had a few drinks at a friend's house and smoking marijuana. Monteiro testified that, as he was "enjoying [his] drink, some dude walked by [him] and nudged [him] with his shoulder." Monteiro, who is about six feet tall, testified that the person who bumped into him was a black male about as tall as Monteiro's shoulders. Shortly thereafter, Monteiro was shot five times. His next memories were of hearing people running and screaming, the presence of an ambulance, and being tended to by a lady.

Alize Huntley was the third person shot that night. When she was shot, she was standing by the bar waiting for her friend. In a statement Huntley gave to the police while at the hospital, she said that she felt a burning sensation in her leg, and retreated to the men's bathroom during the chaos caused by the shooting. At that point, she saw that she was bleeding and spotted a bullet on the bathroom floor.

Tameisha Haynes was also at El Tiburon that night. At the time of trial, she was thirty-two years old. Haynes, a nursing student, was meeting two friends at El Tiburon to talk through a disagreement her friends were having. When she arrived at around 12:30 a.m., Haynes and her friends first spoke outside El Tiburon, then entered the bar. Inside, people were drinking and chatting—Haynes described it as "a regular bar situation." Because people were playing loud music at the jukebox, Haynes, her friends, and her ex-boyfriend who was also present, had difficulty hearing each other. Haynes bought a drink from the bar and sat near one of the pool tables with her friends and ex-boyfriend.

Haynes first noticed defendant, whom she later identified in court, when defendant bumped into Haynes's friend, spilling her friend's drink. Haynes testified that the person was a black male, about her height or a little taller, wearing black Levi jeans and a black top.[1]

Haynes noticed that defendant and another man were having "an exchange of words[.]" She slid down the pool table to avoid any chance of confrontation between the two individuals. Haynes heard defendant say, "Yeah, okay, motherfucker[,]" and saw him walk towards the exit.

According to Haynes, defendant then "unleashed the firearm and started shooting." Haynes saw defendant fire two rounds before she ran to the corner with an ATM and ducked down. After firing about five rounds, defendant exited through the Harold Street exit. As Haynes was leaving, she saw a victim bleeding on the floor. Haynes testified that, as a nursing student, she felt compelled to stop and help him.

---

[1] The security video taken from El Tiburon that night depicts different clothing colors for defendant and others than described at trial. Despite Haynes's testimony that defendant's jacket was black, the video footage taken from the bar that night showed defendant's clothing as "red, maroon, or some color in that area." The video also depicted Haynes's black sweatshirt as light gray, and a detective's black jacket appeared "light or powder blue."

All three victims gave statements to the police after the shooting, although, in their statements, only one could identify the shooter. Tager spoke to the police about two months after the shooting. Monteiro refused to discuss the incident with the police until just prior to trial, despite their efforts to quickly obtain a statement. Neither Monteiro nor Tager could identify the shooter. Huntley, however, was able to identify defendant as the shooter because she had known him for a few years. Huntley gave a statement to Detective Brian Dyer on October 21, 2015, while she was still in the hospital for treatment of her gunshot wound. In her statement to police, not only did she identify defendant as the shooter, but she also recounted the night's events. Huntley signed a photograph of defendant at that time and captioned it: "Mike Stokes - saw him let off shots at El Tiburon."

After the shooting, the police could not immediately locate defendant. Eleven days later, defendant was discovered in North Carolina and apprehended.

## II

### Travel

The defendant was charged with a seven-count criminal information on November 18, 2015, and a four-day jury trial began on February 6, 2017. In addition to Haynes, Tager, Monteiro, and Huntley, the jury heard testimony by a member of the Bureau of Criminal Identification Unit of the Attorney General's Office, a forensic scientist at the Rhode Island Department of Health, and three members of the Providence police department. The jury rendered a verdict on February 15, 2017, finding defendant guilty of all seven counts. The trial justice denied defendant's motion for a new trial after a hearing on February 24, 2017. The defendant was sentenced on April 20, 2017, and he timely filed a notice of appeal.

## Discussion

The defendant raises three issues on appeal. He contends that (1) he was prejudiced by a midtrial disclosure of the identity of witnesses who were placed in witness protection, in violation of Rule 16 of the Superior Court Rules of Criminal Procedure; (2) the trial justice erred when he allowed Huntley's statements to the police into evidence as prior inconsistent statements; and (3) the trial justice erred in denying defendant's motion for a new trial. We discuss each in turn.

### A

### Rule 16

The defendant contends that the state withheld information related to witnesses Haynes's and Huntley's involvement in the witness protection program, in violation of Rule 16. The defendant had sought information related to the witness protection program several times before filing his January 30, 2017 Motion for Disclosure of Promises, Rewards, and Inducements—to which the state's alleged untimely response is at issue here. Soon after defendant's December 3, 2015 arraignment, defendant's counsel filed three pretrial motions: a motion for impeachment evidence pursuant to *Giglio v. United States*, 405 U.S. 150 (1972)[2]; a motion for disclosure of promises, rewards, and inducements; and a motion for disclosure of exculpatory information, which included a specific request for any information related to protective services. On March 15, 2016, the state responded that any exculpatory information had already been disclosed in the

---

[2] *Giglio v. United States*, 405 U.S. 150 (1972), stands for the proposition that a prosecutor must disclose any material evidence affecting witness credibility, such as a promise to a witness that he or she would not be prosecuted if he or she cooperated with the government, thus clarifying that such evidence falls within the ambit of a prosecutor's disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). *Giglio*, 405 U.S. at 154.

state's discovery response, and that no statement of promises, inducements, or rewards had been made to any witness. The state's answer did not address the witness protection program.

At a pretrial motion hearing on April 15, 2016, defendant raised the state's response to his motions with the court. The state told the court there had been no promises, rewards, or inducements; and that, although there were "witness protection issues[,]" the state did not consider witness protection to be a promise, reward, or inducement. Later during the hearing, the trial justice gave the following direction: "If [the state] want[s] to give [defense counsel] * * * some indication * * * that would include whether the witness has been provided with relocation expenses, housing, apartment expenses, per diem * * * [g]ive him sort of a general response. And if [defense counsel] needs more meat on the bones, he will say so." The record is silent as to whether those details were subsequently disclosed by the state.

On October 20, 2016, defendant's counsel withdrew and, the next day, new counsel filed an entry of appearance. The defendant then filed some general discovery motions, to which the state replied with the answers and documents it had previously provided. On January 30, 2017— a week before trial was scheduled to begin—defendant filed a Motion for Disclosure of Promises, Rewards, and Inducements. The defendant's counsel, being relatively new to the case, admitted at a pretrial hearing on February 2, 2017 that, although the same motion had likely been filed by prior counsel, it was easier for her to file a new motion than to sort through prior counsel's files. The state filed its answer on February 10, 2017, in the middle of trial, and indicated that Huntley and Haynes both had been placed in the witness protection program.[3] The

---

[3] The state's answer does not indicate the nature or extent to which the state program has provided witness protective services to Huntley and Haynes.

defendant did not file an objection, request a continuance, or otherwise argue that this response was untimely or prejudicial, and he made no mention of the late filing that day during trial.[4]

On appeal, defendant argues that the state violated Rule 16 when it untimely disclosed that Haynes and Huntley were in the witness protection program and that the late response "denied the defendant the opportunity to present the best defense." The state argues that defendant waived this argument.

Upon review of the trial record, we agree with the state: Defendant's Rule 16 argument is waived. Under this Court's well established "raise or waive" rule, a specific objection is required to preserve an issue for appellate review. *State v. Perry*, 182 A.3d 558, 573 n.8 (R.I. 2018); *see also State ex rel. Town of Tiverton v. Pelletier*, 174 A.3d 713, 718 (R.I. 2017) ("This Court has long adhered to the 'raise or waive' rule, which provides that 'an issue that has not been raised and articulated previously at trial is not properly preserved for appellate review.'" (quoting *In re Shy C.*, 126 A.3d 433, 434-35 (R.I. 2015))).

Here, defendant raised no objection, either in writing or on the record, to the state's February 10, 2017 response, nor did he request a continuance or move to pass the case. The defendant did not argue to the trial justice that this response was untimely or that any new information was prejudicial to his defense. Because this purported violation was not called to the trial justice's attention during trial, he was unable to consider whether the violation was intentional or prejudicial pursuant to the well established factors relative to alleged Rule 16 violations. *See State v. Marte*, 92 A.3d 148, 151 (R.I. 2014) ("A trial justice considering an

---

[4] Although defendant did not challenge the timeliness of the state's disclosure concerning Huntley's witness protection participation, defendant did cross-examine Huntley about whether she had received any rewards or inducements from the state to testify against defendant at trial. Huntley claimed she was given money to stay in a hotel, but had pocketed the cash. After defendant opened the door to questioning about the witness protection service, the state questioned Det. Dyer about whether he had ever discussed witness protection with Huntley.

alleged discovery violation pursuant to Rule 16 * * * should examine four factors: (1) the reason for the nondisclosure; (2) the prejudice to the other party; (3) whether or not a continuance can rectify any such prejudice; and (4) any other relevant factors." (quoting *State v. Grant*, 946 A.2d 818, 828 (R.I. 2008))).[5] Accordingly, we are of the opinion that defendant's Rule 16 argument was not adequately preserved and is therefore not properly before the Court in this appeal.

## B

### Prior Inconsistent Statement

The defendant next argues that the trial justice violated Rule 801(d)(1)(A) of the Rhode Island Rules of Evidence by allowing Huntley's October 21, 2015 statement to the police into evidence.[6] We review the trial justice's admission of evidence for "clear abuse of discretion." *State v. Matthews*, 88 A.3d 375, 383 (R.I. 2014) (quoting *State v. McManus*, 990 A.2d 1229, 1234 (R.I. 2010)).

"It is well established that decisions concerning the admissibility of evidence are within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's decision unless a clear abuse of that discretion is apparent." *State v. Alves*, 183 A.3d 539, 542 (R.I. 2018) (quoting *State v. Adams*, 161 A.3d 1182, 1194 (R.I. 2017)). "The trial justice will not have abused his or her discretion as long as some grounds supporting his or her decision appear in the record." *Id.* (quoting *Adams*, 161 A.3d at 1194).

---

[5] Even if defendant's Rule 16 argument was preserved for our review, defendant utterly fails to articulate any prejudice defendant suffered by the late disclosure. The defendant argues that he was denied the opportunity to present his best defense, yet declines to explain how counsel might otherwise have argued his case or changed defense strategy. No discussion is provided to the Court as to whether defendant could have avoided conviction by creating reasonable doubt in the minds of one or more jurors had Huntley's witness protection status been disclosed earlier.

[6] The defendant also argues that the audiotape of Huntley's recorded statements was inadmissible under Rule 803(5) of the Rhode Island Rules of Evidence, the recorded recollection exception to the hearsay rule. Because we find Huntley's prior statements, including the audio recording, admissible as prior inconsistent statements, we need not address this argument.

At trial, Huntley refused to identify defendant and claimed she did not remember giving a statement to the police. Huntley insisted that, when she gave the statement to the police, she was under the influence of recreational drugs and on prescription medication. Outside the jury's presence, the trial justice deemed Huntley a hostile witness. The trial justice allowed the state to impeach Huntley by using the transcript of her police statement to show her prior inconsistent statements. Before the jury, the prosecutor read the detective's October 21, 2015 questions to Huntley, and her answers, and then asked Huntley if she indeed had made those statements. During her testimony, Huntley denied making the statements at times, and, at other times, replied "I may have[.]" Huntley insisted that, when she made those statements, she was so under the influence that she "couldn't even tell you who [she] was[,]" further evidenced by her self-described "stuttering" on the police recording. The trial justice then allowed the state to impeach Huntley by playing portions of the police statement recording to the jury. Later, the trial justice instructed the jury that a witness's prior statements may be considered not only to assess a witness's credibility, but also as substantive evidence.

Rule 801(d)(1)(A) provides that a witness's prior inconsistent statement is not hearsay and thus is admissible if the declarant testifies and "is subject to cross-examination concerning the statement[.]" *See State v. Ros*, 973 A.2d 1148, 1160 (R.I. 2009). The "justification" for Rule 801(d)(1)(A), and in particular the cross-examination requirement, is to "put[] the trier-of-fact in as good a position to appraise the reliability of the prior statement as it would be if the prior statement were made under oath." Rule 801 Advisory Committee's Notes.

Indeed, this Court has held many times that a witness's prior inconsistent statement is admissible if the witness is available for cross-examination regarding the statement. In *State v. Jaiman*, 850 A.2d 984 (R.I. 2004), a key witness "suffered a convenient failure of memory,

declaring over and over again, especially at critical points about details of [a] drive-by shooting, that he had difficulty remembering the events of [that evening]." *Jaiman*, 850 A.2d at 986. On appeal, the defendant argued that the witness's prior statement should not have been admitted at trial under Rule 801(d)(1)(A) because his lack of memory left him "functionally unavailable for meaningful cross-examination[.]" *Id.* at 987. This Court found that, because the witness was subject to cross-examination, the "veracity of [the witness's] in-court testimony was thoroughly probed and compared with his earlier police statement" and therefore Rule 801(d)(1)(A)'s requirements were satisfied. *Id.* at 990.

Similarly, in *McManus*, a key witness "professed a total failure of memory about everything concerning the incident, including his discussions with the state police." *McManus*, 990 A.2d at 1232. Despite his refusal to admit that the prior statement was accurate, we found that his prior inconsistent statements to the police were admissible under Rule 801(d)(1)(A). *Id.* at 1236. Through the witness's testimony at trial and on cross-examination, the "underlying rationale" of Rule 801(d)(1)(A) was fulfilled because the factfinder was able to determine which statement was "worthy of belief." *Id.*

Again, in *Matthews*, a key witness "professed a lack of memory regarding almost all of the facts salient to the [crime], including his own signature and the sound of his voice." *Matthews*, 88 A.3d at 384. We held that the trial justice properly allowed the prosecutor to question the witness about the details of his police statement and properly admitted into evidence a police recording under Rule 801(d)(1)(A) because the defendant cross-examined the witness and the jury could decide the truthfulness of those statements. *Id.* Notably, in *Matthews*, this Court did not treat the admission of the prior inconsistent statements by playing an audio

recording to the jury differently from prior inconsistent statements read into evidence for the jury. *Id.*

The defendant attempts to distinguish the instant case by arguing that Huntley's lack of memory due to having taken drugs is different from the witnesses in the above cases, who claimed pure failure of memory. The defendant's distinction, however, is of no import. The "touchstone" of Rule 801(d)(1)(A) is satisfied here: Huntley testified and was subject to vigorous cross-examination concerning the circumstances of her October 21, 2015 statement to police. *See Jaiman*, 850 A.2d at 988. At trial, Huntley claimed she was "stuttering" and under the influence when she gave her statement, and the trial justice ruled that the jury had a right to hear the recording of her statement and determine for itself which statements were "worthy of belief." *McManus*, 990 A.2d at 1236. This reasoning comports with Rule 801(d)(1)(A)'s underlying purpose, which is to "put[] the trier-of-fact in as good a position to appraise the reliability of the prior statement as it would be if the prior statement were made under oath." Rule 801 Advisory Committee's Note. Consequently, we are of the opinion that the trial justice did not abuse his discretion when he allowed the state to question Huntley about the details of her October 21, 2015 statement to the police, nor did the trial justice abuse his discretion when he allowed the recording to be played to the jury.

## C

### Motion for a New Trial

On February 24, 2017, the trial justice denied defendant's timely motion for a new trial. Observing that Haynes "unwaveringly and adamantly identified defendant Stokes as the shooter at the El Tiburon club the night of October 17th, 2015[,]" the trial justice found Haynes "very credible, without guile or pretense." In fact, he found that her testimony, "by itself[,]" was

"sufficient evidence which amply supports the juror's [*sic*] verdict in this case." The trial justice rejected as a "red herring" the video depiction of defendant's jacket (red), finding that, although the jacket appeared to be a different color from what Haynes testified to (black), the video had distorted the clothing colors depicted. The trial justice also explained that he "listened carefully" to Huntley's police statement and found that she was "calm" and "sounded perfectly normal" despite Huntley's insistence at trial that her statement was, in the trial justice's words, "rife with stuttering and clouded by a diminished mental condition[.]" "There is no question," the trial justice observed, "that her prior statements to [the police] were the truthful ones." The trial justice strengthened his reasoning by crediting the testimony of the police officer, who testified that, when he took Huntley's October 21, 2015 statement, she never displayed any signs of being under the influence. Finally, the trial justice pointed to defendant's "suspicious presence" in North Carolina after the shooting, and defendant's conversation from the local jail, which "demonstrated quite clearly that he had fled there in an effort to escape apprehension in Rhode Island."

On appeal, defendant first contends that the trial justice erred in finding Haynes's testimony credible when weighed against the other witnesses' inability to identify defendant as the shooter. Second, defendant asserts that the trial justice erred in crediting Huntley's prior inconsistent statement. The state argues that the trial justice appropriately denied defendant's motion for a new trial and that he provided ample reasons for the denial.

Under the "oft-repeated" and "well settled" test this Court applies when reviewing a motion for a new trial, we examine whether the trial justice acted as a "thirteenth juror" and exercised his or her "independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Cerda*, 957 A.2d 382, 385 (R.I. 2008) (quoting *State v. Bergevine*, 942

A.2d 974, 981 (R.I. 2008)).  When considering a motion for new trial, the trial justice must undertake a three-step analysis: "(1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury." *State v. Greenslit*, 135 A.3d 1192, 1197 (R.I. 2016) (quoting *State v. Hie*, 93 A.3d 963, 974 (R.I. 2014)).  If, after conducting this three-step analysis, "the trial justice concludes that reasonable minds could differ as to the result or if the trial justice reaches the same conclusion as the jury did," the motion for a new trial should be denied and the verdict should be affirmed. *State v. Espinal*, 943 A.2d 1052, 1058 (R.I. 2008) (quoting *State v. Day*, 925 A.2d 962, 984 (R.I. 2007)).  Conversely, if the trial justice finds that reasonable minds could not differ or does not agree with the jury's verdict, "then the trial justice must complete a fourth analytical step[.]" *Greenslit*, 135 A.3d at 1197.  The trial justice must "determine whether the verdict is against the fair preponderance of the evidence and fails to do substantial justice."  *State v. Gonzalez*, 56 A.3d 96, 102 (R.I. 2012) (quoting *State v. Robat*, 49 A.3d 58, 71 (R.I. 2012)); *see also Greenslit*, 135 A.3d at 1197.

A trial justice is "present during all phases of the trial" and, consequently, is "in an especially good position to evaluate the facts and to judge the credibility of the witnesses." *State v. Diaz*, 159 A.3d 1053, 1062 (R.I. 2017) (quoting *State v. Paola*, 59 A.3d 99, 104 (R.I. 2013)). We therefore afford great deference to a trial justice's ruling on a motion for a new trial "if he or she has articulated sufficient reasoning in support of the ruling." *Id.* (quoting *State v. Muralles*, 154 A.3d 925, 932 (R.I. 2017)).  For that reason, we "will not overturn a trial justice's determination with regard to such a motion unless we determine that the trial justice committed clear error or that he or she overlooked or misconceived material and relevant evidence [relating]

to a critical issue in the case." *State v. Silva*, 84 A.3d 411, 417 (R.I. 2014) (alteration in original) (quoting *State v. Texieira*, 944 A.2d 132, 141 (R.I. 2008)).

First, defendant asserts that Haynes's testimony—the only testimony to directly identify defendant as the person who committed the crimes for which he was charged—was not credible because Haynes identified defendant as wearing a black jacket the night of the shooting and the El Tiburon video footage shows the shooter in a red jacket. In explaining his reason his denial of the motion, the trial justice acknowledged the distorted colors of the video. The trial justice, however, also noted that the colors of other clothing that appeared in the video—not just defendant's—were clearly distorted for an "inexplicable reason[.]" He pointed to a photo taken that night outside El Tiburon of Det. Dyer wearing a black jacket, which the video depicts as light blue. We are satisfied that the trial justice, notwithstanding the distorted colors, appropriately considered the totality of the evidence—including Haynes's testimony, Huntley's prior statements, Monteiro's testimony, and defendant's flight to North Carolina—in denying defendant's motion for a new trial.

Second, defendant asserts that Huntley's testimony was so problematic that the court should have disregarded everything she said, including her prior inconsistent statement made to the police. According deference to the trial justice's findings, we hold, however, that the trial justice did not err in crediting Huntley's prior inconsistent statements to the police despite Huntley's conflicting testimony at trial. The trial justice noted that Huntley was "sarcastic and extraordinarily rude, to the point of being uncommonly obnoxious," in an attempt to distance herself from the statement that she had given to the police. Yet, after he heard the recording, the trial justice found Huntley's recorded statement to be "rather matter-of-fact" and "without hesitation or embellishment[.]" Despite her insistence at trial that she was high when she gave

- 14 -

her statement, the trial justice found that "it was obvious, as it would have been to any casual listener, much less the very attentive jurors in this case, that Ms. Huntley was not at all under the influence of intoxicants of any kind."

Perhaps most significant, the trial justice found that "Haynes'[s] very credible testimony by itself was easily enough evidence upon which to support the verdict." In light of the "overwhelming" evidence of the defendant's guilt, the trial justice concluded that "[n]o fair-minded juror could have possibly reached a different result." Therefore, we are satisfied that the trial justice properly denied the defendant's motion for a new trial.

## IV

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be returned to the Superior Court.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Michael Stokes. |
| **Case Number** | No. 2017-251-C.A.<br>(P2/15-3731AG) |
| **Date Opinion Filed** | January 29, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Robert D. Krause |
| **Attorney(s) on Appeal** | For State:<br><br>Owen Murphy<br>Department of the Attorney General |
| | For Defendant:<br><br>Jodi M. Gladstone, Esq. |