Justice GOLDBERG,
dissenting in part and concurring in part.
I concur in the majority’s opinion with respect to the denial of the defendant’s motion for a new trial, and I also concur in the judgment of the Court affirming the conviction in the face of the defendant’s challenge to the trial justice’s admission of Carlos’s prior testimony. However, I cannot agree with my colleagues that “the requirements of Rule 612 [of the Rhode Island Rules of Evidence] were not satisfied” and that, therefore, the prior testimony should not have been read into the record. In my opinion, the requirements of Rule 612 are irrelevant in this case because Carlos’s prior testimony was properly admitted as a prior inconsistent statement made by a previously cooperative witness. Therefore, I would affirm the trial justice’s decision allowing this testimony into evidence at trial.
Under Rule 801(d)(1)(A) of the Rhode Island Rules of Evidence, “[a] statement is not hearsay if: * * * The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant’s testimony[.]” In this trial, at a point in the state’s case when defendant’s diminished-capacity defense very much was in play,[1] Carlos testified that, in the hours leading up to the murder, defendant and Shelton were drinking in Brenda’s apartment. When asked how many drinks defendant consumed that evening, the witness responded, “/ really don’t know.” (Emphasis added.) The witness was also asked whether defendant exhibited any signs of intoxication, and Carlos answered, “I wasn’t really focusing on that. I guess so. He didn’t seem to [sic ] much, but I don’t know.” (Emphases added.) Additionally, Carlos could not recall whether or not defendant was slurring his words. When asked whether he saw defendant get up or walk at all when he was inside the apartment, the witness responded, “Don’t really recall that,” despite admitting moments earlier — after his recollection was refreshed by his police statement — that he observed defendant make a sandwich and watch a movie with his sister that evening. This testimony does not reflect a failure of memory as the majority concludes.
This occasion — in November 2007 — was not the first time the witness testified about what transpired in the apartment shortly before the murder. Approximately seven months earlier, in early May 2007,[2] Carlos testified at Shelton’s trial, before the same trial justice who presided over defendant’s trial. During that appearance, Carlos testified that, although defendant and Shelton were drinking in the early morning hours of July 27, 2006, they were “acting normally”; they were not slurring their words or falling down and were capable of conversing with Carlos while they played video games. At defendant’s trial in November 2007, the prosecutor confronted Carlos with this prior testimony after he testified that he did not know about or was not focusing on these same facts and professed an inability to recall a number of important details about defendant’s consumption of alcohol shortly before the murder. In my opinion, this was proper impeachment evidence and not a *677 Rule 612 exercise intended to refresh the witness’s recollection. .
In State v. Matthews, 88 A.3d 375 (R.I.2014), this Court explained the circumstances in which prior testimony might be admissible under Rule 801(d)(1)(A) to impeach a witness who was experiencing a “convenient failure of memory” on the witness stand:
“Where a witness no longer remembers an event, a prior statement describing that event should not be considered inconsistent. Yet the tendency of unwilling or untruthful witnesses to seek refuge in a claim of forgetfulness is well recognized. Hence the judge may be warranted in concluding under the circumstances the claimed lack of memory of the event is untrue and in effect an implied denial of the prior statement, thus qualifying it as inconsistent. The case law readily accepts this position.” Matthews, 88 A.3d at 384 (quoting 2 McCormick on Evidence. § 251 at 214 (7th ed.2013).
On several occasions, this Court has affirmed a trial justice’s admission of prior statements of a witness in these circumstances. See, e.g., id. (affirming introduction of witness’s police statement under Rule 801(d)(1)(A) where witness “professed a lack of memory regarding almost all of the facts salient to the robbery and his subsequent arrest”); State v. McManus, 990 A.2d 1229, 1234-36, 1236 (R.I.2010) (affirming introduction of witness’s police statement even though it was improperly admitted by the trial justice as a recorded recollection because the statement could have been admitted as a prior inconsistent statement under Rule 801(d)(1)(A) where witness “purported to suffer from jail-house amnesia, a frequent malaise”); State v. Jaiman, 850 A.2d 984, 986, 986-88, 990 (R.I.2004) (affirming introduction of witness’s police statement under Rule 801(d)(1)(A) where witness “suffered a convenient failure of memory, declaring over and over again, especially at critical points about details of this drive-by shooting, that he had difficulty remembering”). As this Court explained in Matthews, 88 A.3d at 384, once the prior statement of the witness is admitted, the question of whether the witness’s inability to recall is in fact untrue and an implied denial of the prior statement is ultimately a question for the jury in assessing the witness’s credibility. See also McManus, 990 A.2d at 1236 (explaining that the purpose of Rule 801(d)(1)(A) is “to allow for [prior inconsistent] statements * * * to be introduced as substantive evidence in order for the fact finder to decide which statement [i.e., the prior inconsistent statement or the in-court testimony], if any, is worthy of belief’). Importantly, this testimony is admitted as substantive proof at trial.
I am of the opinion that the'circumstances of this case are analogous to— although not as extreme as — those in Matthews, McManus, and Jaiman and served as the basis for the impeachment evidence. I reach this, conclusion notwithstanding the prosecutor’s question to Carlos whether reading a transcript of the prior testimony would “refresh [his] memory.” It is apparent from the record that the prior testimony was being used not to refresh Carlos’s recollection, as was done immediately beforehand with the witness’s police statement, but to impeach his inconsistent testimony under Rule 801(d)(1)(A). The record supports this conclusion. Shortly before Carlos’s prior testimony was admitted, it was quite clear that the prosecutor was well versed in the proper procedure for refreshing a witness’s recollection and *678 clid ' so in a textbook-perfect manner.[3] Nonetheless, the witness continued to be vague, and elusive ■ after reading his police statement, .The prosecutor- then asked whether Carlos saw Shelton and defendant leave the apartment on that fateful early morning. When Carlos answered, “I don’t remember,” the trial justice ordered a recess and stated, “Have the witness review his statement.” Shortly after the recess, Carlos’s inability to recall important details resumed once again, this time in response to questions bearing on defendant’s diminished-capacity defense.
At this point, after Carlos stated, “I really don’t know,” “I wasn’t really focusing on that,” “I don’t know,” and “I don’t really recall” with respect to the salient facts about defendant’s level of intoxication, the prosecutor confronted him with his prior testimony. It is clear from the record that'this inquiry did not follow the steps that the prosecutor took when previously refreshing Carlos’s recollection with his police statement. The prior testimony was used to impeach the witness with a prior inconsistent statement. Moreover, this seasoned trial justice, who was a front-and-eenter observer of Carlos’s testimony in May 2007 and his performance in November 2007, clearly understood that this was impeachment of the witness’s testimony with a prior inconsistent statement. In response to defendant’s objection to the prosecutor’s use of the prior testimony, the trial justice tersely responded, “Overruled. This is prior testimony. Overruled.” In my opinion, it is apparent from the record that the trial justice permitted the prosecutor to impeach Carlos with his prior inconsistent statement and that the prosecutor was no longer attempting to refresh the recollection of this recalcitrant witness. The prosecutor’s repeated demonstration of her ability to refresh Carlos’s recollection in textbook fashion a mere ten transcript pages before the crucial exchange, when coupled with the trial justice’s comment that “[t]his is prior testimony,” makes me unable to join the majority’s analysis of whether “the requirements of Rule 612” were satisfied and the majority’s conclusion that they were not. I am of the opinion that Rule 612 is simply not implicated in this case and this evidence was properly admitted under Rule 801(d)(1)(A).
*679 I pause to note, however, that the trial justice’s refusal to grant defense counsel’s request to be heard on the objection or at a sidebar conference is unfortunate. Defense counsel’s request should have been granted. The efficacy -of appellate review is strengthened by a developed record, and, in this case, had the parties and the trial justice discussed the use of the prior testimony on the record, this Court’s resolution of the issue would have been more straightforward. Nonetheless, I remain convinced from my review of the record' that the trial justice appropriately allowed the prosecutor to impeach the suspiciously-forgetful Carlos with his prior testimony and to admit that testimony under Rule 801(d)(1)(A). I cannot agree that this evidence was erroneously admitted, notwithstanding the majority’s conclusion that the errpr was harmless. In my opinion; a harmless-error analysis of. this testimony is unnecessary in the context of this case. Consequently, I respectfully dissent in part and concur in part."

. Although the prosecutor in defendant’s trial referred to Carlos’s prior testimony as occurring in June 2007, it appears that the prosecutor was mistaken about the date.

. The following exchange is illustrative:
"Q Do you recall what time — Well, you mentioned that you ’were in the living room playing video games ' with ■ [defendant]. What .time did you start playing, video games, if you know, with [defendant] and Alonzo Shelton?
"A I don’t remember that time. '
“Q Did you give a witness statement in this case, .sir?
“A Yes.'
"Q If I showed you that, might that refresh your recollection?
“A, Yes.
"[Prosecutor]: Judge, I’d ask this be marked as State’s 83 as an identification exhibit. *
"(EXHIBIT MARKED)
"Q Mr. Alvarez, do you recognize that?
"A Yes. .
"Q What do you recognize that to be?
“A My witness statement,
"Q And I’m going to direct your atten- ' tion to the first page of that witness state- • ment, in particular to the bottom couple of lines of that statement. I’m going to ask you to read that to yourself and indicate to me when you're through.
“A Which lines?
"Q I’m going to direct your attention to [the] sixth, seventh, and eighth lines down. Read those to yourself and tell me when you’re through.
"(PAUSE) ■
"A Okay.
“Q Does that refresh your recollection as to what time you started playing video games with this defendant and Alonzo Shelton?
"A Yes.
"Q Okay. Approximately what time was it that you started playing video games with Alonzo Shelton and [defendant]?
"A Two o’clock."