May 26, 2017

**Supreme Court**

No. 2015-32-C.A.
(P2/13-1299ADV)

| | |
|---|---|
| State | : |
| v. | : |
| Hakim Funches. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                    :

v.               :

Hakim Funches.        :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.** This case came before the Supreme Court on May 3, 2017, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. The defendant, Hakim Funches (Funches or defendant), appeals from a judgment of conviction entered in the Superior Court, following a jury trial. The defendant was convicted of one count of domestic assault by strangulation and one count of simple assault. After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and that this case should be decided without further briefing or argument. We affirm the judgment of conviction of the Superior Court.

### Facts and Travel

Funches and the complaining witness, Jennifer Bacon (Bacon), were involved in a relationship for approximately four years and were the parents of two daughters. They also lived together for a period of time.[1] On October 23, 2012, Bacon departed her home at 4:30 p.m. to

---

[1] At trial, it was a contested issue whether they remained romantically involved and were living together in the fall of 2012.

begin her night shift at Domino's Pizza in Warwick, Rhode Island. Funches was at Bacon's apartment, watching their children. The pair argued through text messages and phone calls throughout Bacon's shift about whether Bacon was romantically involved with another man. Funches denied sending or receiving text messages from Bacon on this particular night. Bacon testified that, because Funches was so "hostile," she went to a friend's house after work. The defendant continued to contact Bacon, threatening to "take [her] daughters up to Massachusetts with no car seats at three something in the morning" if she did not return home. Bacon responded that she was returning home and that, as soon as she arrived, Funches could leave. She returned home at approximately 3:30 a.m. It was a violent homecoming.

Bacon testified that, when she entered her home, Funches "immediately came from behind the door and ripped [her] phone out of [her] hand and slammed [her] into the kitchen table." Funches placed Bacon's cellphone in the pocket of his pants. He then "threw [her] on the floor[,] and he got on [her,] and put his knees against [her] shoulders and * * * took [her] chin and repeatedly smacked [her] head into the tile floor." Throughout this episode, Funches repeatedly declared that he would not tolerate any romantic involvement with another man. When Bacon stated that she was going to contact the police, Funches responded that "[i]f [he was] going to go to jail, [he was] going to make it worth it." At that point, Funches lifted Bacon from the floor by her shirt and tried to place her on a chair, but he did so with such force that the chair "shattered" and Bacon fell to the floor. Bacon testified that Funches "dragged [her by her hair] back to the center of the room and started hitting [her] head against the floor again." Funches then grabbed their daughter's jump rope, wrapped it around Bacon's neck, and "continuously choked [her] for about an hour on and off." When it appeared that Bacon was

- 2 -

about to "pass out," he would pause; but he would then start choking her again.  Bacon testified that she was seeing stars and felt dizzy.

Funches eventually stopped choking Bacon when his daughters began to wake up in the next room; however, according to Bacon, the abuse did not end.  Funches dragged her by her hair to the bedroom and threw her on the bed.  When Bacon called Funches a "scumbag," he attempted to remove her slacks, declaring, "I'll show you a scumbag."  However, when the youngest daughter began crying, Funches went to check on the child and Bacon attempted to flee.  The defendant followed her and pushed her down two flights of stairs.  She eventually reached the front door and proceeded directly to the Providence police station.  She returned to the apartment with three police officers.  Funches subsequently was arrested.

Funches testified and provided a different version of events.  According to defendant, when Bacon returned home, he informed her that he was ending their relationship, filing for joint custody, and requesting physical placement of their daughters.  He explained that he made this decision after Bacon told him that she did not have enough money for the monthly bills.  According to Funches, the argument lasted approximately forty-five minutes, at which time Bacon left the apartment.  He denied that he physically assaulted Bacon.

Funches was convicted by a jury of one count of domestic assault by strangulation in violation of G.L. 1956 § 11-5-2.3 and one count of simple assault in violation of § 11-5-3.  He was sentenced to ten years at the Adult Correctional Institution, three years to serve with seven years of probation on the strangulation count and one year, suspended, on the simple assault count, to run concurrently.  The defendant also was required to complete a batterer intervention program while incarcerated.  He was acquitted of one count of assault with a dangerous weapon—that being the jump rope—in violation of § 11-5-2.  He timely appealed.

- 3 -

Before this Court, defendant argues that the trial justice erred in denying his motion to pass the case after the prosecutor posed an allegedly prejudicial question to defendant. The defendant also contends that the trial justice erred in denying his motion for judgment of acquittal, arguing that he was twice placed in jeopardy for the same act.

## Standard of Review

It is well established "that a decision to pass a case and declare a mistrial are matters left to the sound discretion of the trial justice." State v. Dubois, 36 A.3d 191, 197 (R.I. 2012) (quoting State v. Barkmeyer, 949 A.2d 984, 1007 (R.I. 2008)). "We often have stated that 'the trial justice has a front row seat during the trial so that he can best evaluate the effects of any prejudice on the jury.'" Id. (quoting Barkmeyer, 949 A.2d at 1007). "The ruling of the trial justice * * * is accorded great weight and will not be disturbed on appeal unless clearly wrong." Id. (quoting Barkmeyer, 949 A.2d at 1007). Moreover, "[i]f the prejudice can be cured[,] * * * a mistrial will be ordered only if we are convinced that the cautionary instructions were untimely or ineffective." State v. Disla, 874 A.2d 190, 198 (R.I. 2005) (quoting State v. Shinn, 786 A.2d 1069, 1072 (R.I. 2002)). "In the absence of any indication that the jury was not capable of complying with the trial justice[']s cautionary instruction, this court must assume that the jury did disregard the witness comments as it was instructed to do." Id. (quoting State v. Powers, 566 A.2d 1298, 1304 (R.I. 1989)).

"When passing on 'a trial justice's denial of a motion for judgment of acquittal, this Court applies the same standard as the trial justice.'" State v. Long, 61 A.3d 439, 445 (R.I. 2013) (quoting State v. Lynch, 19 A.3d 51, 56 (R.I. 2011)). "A motion for a judgment of acquittal should be granted only if the evidence, viewed in the light most favorable to the prosecution, is insufficient to establish the defendant's guilt beyond a reasonable doubt." Id.

(quoting State v. Heredia, 10 A.3d 443, 446 (R.I. 2010)). "If, however, a reasonable juror could find the defendant guilty beyond a reasonable doubt, the motion should be denied." Id. (quoting Heredia, 10 A.3d at 446).

## Analysis

### Motion to Pass the Case

During the cross-examination of defendant, the prosecutor posed the following question to defendant: "She didn't break up with you a year prior because she saw many naked pictures on your phone?" The defendant responded, "[n]o," but defense counsel immediately objected, and the trial justice sustained the objection. Defense counsel then moved to pass the case. The prosecutor averred that she posed the question for impeachment purposes since defendant claimed that he was still romantically involved with Bacon on the date in question. The trial justice denied the motion to pass the case and gave the following cautionary instruction:

> "Counsel for the State just asked the witness a question about naked photographs on his phone. * * * There's no evidence in this case about his phone, what was on it or what * * * Bacon observed on it. * * * You must disregard the question. It wasn't answered. I sustained the objection. If it was answered, I would strike the answer because there is no evidence whatsoever on this issue in this case.
> "Now, I'm going to ask you, * * * can each of you disregard that question as though you never heard it? Each of you has nodded in the affirmative that you can. So I'm not making any mistakes here, is there anybody here who has any difficulty whatsoever having heard that question, and I'll take you to sidebar. Nobody has difficulty, and you can all disregard it as though you never heard it? Thank you. Proceed."

The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and article 1, section 10, of the Rhode Island Constitution guarantee a defendant's right to a "fair trial by an impartial jury." State v. Ordway, 619 A.2d 819, 826 (R.I. 1992). Improper prosecutorial comments could "deprive a litigant of a fair trial," as one

- 5 -

cannot often "'unring the bell' once it has soundly rung[.]" Id. Accordingly, "[w]e must * * * determine whether the prosecutor's remarks 'so poisoned the well' that the trial's outcome was likely affected." Id. (quoting United States v. Mateos-Sanchez, 864 F.2d 232, 240-41 (1st Cir. 1988)).

In Ordway, 619 A.2d at 825, the prosecutor asked the defendant, who was on trial for stabbing her husband to death, if she recalled stabbing another person with whom she previously lived. The Court recognized that "[o]nce laypeople have heard evidence, or in this case a remark, tending to show that the defendant committed a crime similar to the one he or she is being tried for, their impartiality may become tainted." Id. at 826. The defendant in Ordway claimed that she suffered from battered woman syndrome. Id. at 827. We stated that jurors may have difficulty understanding this syndrome and that the prosecutor's question could likewise paint the picture that the defendant "was not so helpless." Id. The Court also acknowledged that the state made minimal efforts to substantiate this evidence such that the defendant did not move for its exclusion by way of a motion in limine. Id. at 826-27. Under the particular circumstances in Ordway, we held that "[t]he cautionary instructions and the individual examinations of the jurors by the trial justice, although commendable, did not dispel the prejudicial effect created by the question." Id. at 828. We are of the opinion that the Ordway case is distinguishable from the facts of the case at bar.

We consider on an ad hoc basis "the prejudicial effect of challenged remarks in light of the context in which they were uttered." State v. Anil, 417 A.2d 1367, 1373 (R.I. 1980). In this case, in contrast to Ordway, the alleged conduct of defendant—while not laudable—is not criminal in nature. See Ordway, 619 A.2d at 826 (expressing concern with the prosecutor's behavior and paraphrasing Rule 404(b) of the Rhode Island Rules of Evidence). The alleged

possession of naked pictures on one's cell phone also is not related to the crimes charged in this case, whereas in Ordway the defendant was charged with murdering her husband with a knife and was asked about having stabbed another person with whom she had lived. We recognized in Ordway, 619 A.2d at 826, that the correlation between the alleged conduct and the charged crime was striking and highly prejudicial.

The defendant argues that possession of lewd photographs has a sufficient nexus to the crimes charged in this case, contending that the incident occurred in a domestic setting and that pictures suggest that defendant "objectifies" women. This argument was not raised at trial, however; nor are we persuaded that possession of photographs of naked individuals is sufficiently related to charges of strangulation and simple assault. In State v. Kholi, 672 A.2d 429, 432 (R.I. 1996), we acknowledged that "the questions posed in Ordway * * * implicated th[e] defendant[] in [a] crime[] similar to the one[] for which [she] stood trial." Id. at 432. Despite the fact that the defendant in Kholi was charged with sexual assault and was asked about previously breaking a glass over the same complainant's hand, the substantial nexus required was lacking because the alleged act did not involve sexual assault. Id. We are satisfied that the alleged possession of naked, non-juvenile photographs is not criminal nor is such behavior substantially related to the crimes charged in this case: strangulation and simple assault.

Accordingly, the prosecutor's question was not so inflammatory that the trial justice was unable to expiate the harm. The trial justice correctly sustained the objection and gave a cautionary instruction to the jury. She likewise asked the jurors three times whether they could disregard the question, each juror nodding in response. We, therefore, are satisfied that, in the circumstances of this case, the cautionary instruction cured the prejudice created by the prosecutor's improper comments. A review of the record does not reveal that the jury was

unable to comply with the trial justice's cautionary instruction, and we "must assume that the jury did disregard the witness comments as it was instructed to do." Disla, 874 A.2d at 198 (quoting Powers, 566 A.2d at 1304). Accordingly, we are satisfied that the trial justice did not err in denying defendant's motion to pass the case.

## Motion for Judgment of Acquittal

The defendant contends that the count of assault with a dangerous weapon, of which he was acquitted, and the count of assault by strangulation, of which he was convicted, were duplicative. Accordingly, defendant avers that he was twice placed in jeopardy for the same act and that the conviction for the single count of domestic strangulation should be vacated. We disagree. Because defendant stands convicted of only one of the two counts, we need not dwell long on this issue.

Rule 12(b)(2) of the Superior Court Rules of Criminal Procedure provides that "[t]he defense of double jeopardy * * * may be raised only by motion before trial." Therefore, "a defendant's failure to raise such a motion before trial precludes that defendant from thereafter raising a double jeopardy challenge." State v. Day, 925 A.2d 962, 977 (R.I. 2007) (citing State v. Feliciano, 901 A.2d 631, 647 (R.I. 2006)). A review of the record indicates that the defendant did not raise the defense of double jeopardy prior to trial as required by Rule 12(b)(2). We therefore consider this issue to be waived. Nonetheless, "[t]he principal evil against which the Double Jeopardy Clause protects—multiple criminal punishments for the same offense—is not implicated in this case because [the] defendant stands convicted of (and punished for) a single offense." State v. Matthews, 88 A.3d 375, 380 (R.I. 2014). The defendant was not twice placed in jeopardy because he was convicted of only one count; he was acquitted of the other. Accordingly, "[b]ecause there was a single conviction in this case, there is no double jeopardy

- 8 -

violation for us to remedy." Id. at 381.  We are, therefore, of the opinion that the trial justice properly denied the motion for judgment of acquittal.

## Conclusion

For the reasons set forth herein, we affirm the judgment of conviction.  The papers in this case shall be remanded to the Superior Court.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Hakim Funches. |
| **Case Number** | No. 2015-32-C.A. (P2/13-1299ADV) |
| **Date Opinion Filed** | May 26, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Netti C. Vogel |
| **Attorney(s) on Appeal** | For State:<br><br>Lauren S. Zurier<br>Department of Attorney General<br><br>For Defendant:<br><br>George J. West, Esq. |